Good morning, everyone, and welcome to the Ninth Circuit in Phoenix. I'm very pleased to be here with my colleagues, Judges Tashima and Hawkins. And we've got four matters for argument today, a number of matters have been submitted. Before we get started, something I always say is that in the Ninth Circuit, there is no extra credit or bonus points for using all of your time. So if you've made your points and the bench is quiet, it's okay to sit down. No issues with that whatsoever. And with that in mind, I'll go ahead and call the first matter, Marks v. Johnson. Good morning, Your Honors. May it please the Court, Kimberly Sandberg with the Federal Public Defender's Office on behalf of John Marks. Can the Court hear me okay? Yes. Okay. I would like to reserve two minutes of my time and I will keep an eye on the clock. Very well. Your Honors, today I would like to focus my argument on the second claim in the brief. And that claim is whether Marks can overcome the procedural default of the ineffective assistance of counsel claim by showing cause and prejudice under Martinez v. Ryan. And I submit that Marks can make that showing here and that he overcomes the procedural default of that claim. I'll begin with cause and I'll be very brief. Marks shows cause. Under Martinez, if a petitioner was pro se or without counsel during state habeas proceedings, he is able to show cause under Martinez. Marks did not have counsel during state habeas proceedings and respondents have even agreed in their briefing that he shows cause. So the real question is whether he can show prejudice to overcome the procedural default of the IAC claim. Now to show prejudice, he merely needs to show that this claim has some merit or that it is substantial. He does not have to show that he will ultimately prevail on the merits of this ineffective assistance of counsel claim, but he merely needs to show that the claim is substantial. And I submit that he can show that this claim is substantial. He can make a substantial showing that his attorney's failure to request a competency evaluation or to investigate his mental health issues was deficient performance. And he can show prejudice and that he was incompetent when he pled guilty. And therefore, his plea was not knowing voluntary. The client is sort of a frequent flyer in the criminal justice system, would you admit? Absolutely, yes. And on at least two occasions, mental health experts who first thought he was not competent later concluded that he was. And at least one of those experts was pretty sure he was malingering. That's true, Your Honor. And that really is a big issue in this case, is back in 2010, 2011, there's this issue of was John Marks malingering? But I would like to address that in two ways, if I can. I think the second way is probably really the crux of the matter, but I think I would like to touch on something that's important before we get to my second point. It's true that some of the evaluators who found him incompetent then changed their opinion. It was after hearing some jail calls between him and his family. But I would like to point out to this Court that at least one of the evaluators who found Marks incompetent then heard the jail calls and still found him incompetent. I point that out because while the jail calls don't sound great as they're written in the courts of the evaluators, it is a subjective, it's a subjective opinion of these doctors. So there was at least one evaluator who found him incompetent, heard the jail calls, and then still found Marks incompetent despite what was said on these jail calls between him and his family. Now I wish we had these jail calls. We don't. It's not for lack of trying. But I would urge this Court to remember that it is the subjective interpretation of the evaluators. Now the second way I'd like to respond to that is that, let's just say hypothetically, and I'm not conceding this, but let's say hypothetically Marks was malingering and was competent in 2011. That does not equal competence in 2015. These are two different time periods, and Marks was going through something very different in 2015 than he was in 2011. So in 2015, we know that Marks was intellectually disabled. He always has been. This is a lifelong intellectual disability. In 2001, his IQ was, his full-scale IQ was 60. In 2017, 16 years later, his full-scale IQ was 64. So we know that his IQ is somewhere between 60 and 64 over a 16-year period. He had also been on Social Security for an intellectual disability since at least 2001. And so we know he's intellectually disabled. But in addition, in 2015, he was going through a complete mental health crisis. And the medical records leading up to his arrest show that. And then the records from the Clark County Jail show that he was never medicated. Would you tell me what you mean when you say a complete mental health crisis? Yes. If I can, I'll walk the court through what was going on with Mr. Marks prior to his arrest and prior to his guilty plea. So he was arrested in March of 2015. Starting in January of 2015, two months before he was arrested, he was in and out of psychiatric hospitals nonstop for two months. So beginning in January, he was involuntarily admitted to a psychiatric hospital. He was held for medical stabilization. He was deemed to have schizophrenia, auditory hallucinations, and he was also deemed to have cognitive deficits. Once he was stabilized, he was able to leave that hospital. Less than a week later, he was involuntarily admitted to another psychiatric facility where he was held for medical stabilization. Once he was stabilized, he was discharged. And this went on and on and on. For two months, he was admitted five times involuntarily as a danger to himself or others. And in this two-month period, there was really only about a week at a time that he would be out of a psychiatric facility, and then he would be readmitted, put back on his medication, stabilized, and discharged. At the end of February of 2015 was his final discharge, and then in March 6, 2015, he was arrested. Upon arrest, he started immediately crying, and he asked the police officer if he could speak to his doctor, not a lawyer. He started crying and asked to speak to his doctor. Then when the officer asked him questions about this, he began babbling incoherently. So this is obviously a man going through a complete mental breakdown. Once he was booked into the jail, he had a violent outburst in booking for no reason. He began fighting another inmate, and he was put in disciplinary custody. He was jailed for two months before he pled guilty. He was never once seen by a psychiatrist during that time, even though he was asking to be put back on his psych medication. So he pled guilty, never having seen a psychiatrist. He was sentenced, never having seen a psychiatrist. And then after sentencing is the first time at the jail that he was seen by a psychiatrist. And when he was seen by that psychiatrist, he was put on psychiatric medication. So back to my original point. Even though he was, again, hypothetically, let's say he was competent in 2011, let's say he was malingering in 2011. That does not equal competence in 2015 when he was an intellectually disabled man going through a complete mental health breakdown. A quick question for you on the standard review. So for the IAC claim prejudice, are you saying it's de novo review, or are you saying do we have to apply AEDPA? No, no. This is de novo review. This is about the procedural default. There is no merits ruling on this claim. On the IAC prejudice. The state courts have not ruled on that.  Okay. And your honors, I see that I'm at the two minute mark. If I, thank you. You got it. Good morning, your honors. My name is Jerry Lynn Hardcastle from the Attorney General's Office of the State of Nevada, and I represent the respondents in this matter. And like my colleague, I'd like to start with the IAC claim. As Ms. Sandberg said, we do agree that Mr. Martinez, or that, I apologize, that Mr. Mark shows cause under Martinez to overcome the procedural default because he was not represented by counsel. However, we disagree with Mr. Marks in that this claim is not substantial. The evidence before this Court shows that Mr. Marks was malingering. There were medical, mental health experts that said he was definitely malingering.  Current evaluations that said that? They were the evaluations from 2010-2011 when he was last before the Court. Counsel in this case did, in the underlying case, did not seek a competency evaluation. And according to this Court standard in Davis v. Woodford, or I apologize, Your Honor, Woodford v. Williams, the Court is not required to conduct a competency evaluation unless there is a bona fide doubt. And counsel's silence on the matter of competency also goes towards whether there is a bona fide doubt that he was competent. Mr. Marks' demeanor in conversations with counsel did not indicate that she needed to seek competency evaluation of Mr. Marks. My opposing counsel argues that competency in 2011 does not equal competency in 2015. However, the record does not show that Mr. Marks was incompetent in 2015. Counsel points to Mr. Marks being in and out of psychiatric hospitals in January, but as counsel concedes, he was stabilized and released. Counsel also points to Mr. Marks crying after being arrested and being — and asking to speak to a doctor. The record shows from the arrest reports that Mr. Marks started crying. He became upset, said that he was in a lot of trouble now, and he asked to speak to a  This is not an indication of incompetency. Apparently, Mr. Marks would prefer to speak to a doctor than to a lawyer at that time. Crying upon arrest certainly doesn't indicate incompetency. I'm sure he's not the first individual to be arrested, especially given his long criminal history record, and to start crying. What did his trial defense counsel say about not seeking an evaluation before a plea was entered? Well, because this is a Martinez claim, there was never an evidentiary hearing on the matter, so counsel has not testified to that. So we don't know. Correct. We don't know. And Mr. Marks fails to overcome the presumption that counsel acted reasonably here. Given his history, why wouldn't reasonably competent trial defense counsel have sought an evaluation? Your Honor — What harm would have occurred by requesting such an evaluation? Your Honor, there would have been no harm in requesting it. As far as why counsel didn't request the hearing — You know, in law school, I had this professor that used to use the Latin phrase a fortiori, which means even more so. Doesn't the fact that no harm would result argue in favor of saying that counsel should have? Even if it — even if it does, Your Honor, Mr. Marks, besides showing deficient performance, must also show prejudice. Here, that is an insubstantial claim because Marks does not show prejudice. However, there's also no evidence in the record that counsel was aware of Marks' prior competency hearings. And the — What does that say about his competency? About counsel's competency? Yeah. Well, Your Honor, there's no case law that puts an obligation upon a criminal defense attorney to investigate the defendant's prior cases. I think, counsel, I want to make sure we're keeping the two buckets separate here. I think we all agree that cause — you concede cause. So the question is, is that what is the evidence that he, in fact, was not competent? Correct? That's really our inquiry here. Not whether the lawyer should have done something. The lawyer didn't do it. We all agree the lawyer didn't do it. Correct, Your Honor. So the inquiry here is what is there in the record to suggest that he was not competent when he entered the plea? Is that what we're looking at here? Yes. Because Mr. Marks, besides showing deficient performance, must show prejudice, and he has not shown that he was incompetent when he entered a plea. And for that point, I take it you would point us to, for example, the change of plea hearing? Yes, Your Honor. Correct. Again, so we're clear here, when we look at whether someone was competent at the time they entered their plea, the first place we usually look to is the transcript of the change of plea hearing. And did the defendant answer the questions, and did it seem to be competent? Yes, he did. There is nothing in the record, nothing in Mr. Marks' demeanor, in his answers, nothing shows that he was incompetent, that he didn't understand the proceedings. Or as the U.S. Supreme Court has established, there is nothing that shows he was not able to consider the alternative choices among him. So you would point us to the change of plea hearing, correct? Yes, Your Honor. You would point us to the arraignment, or the way, I'm sorry, the waiver of the preliminary, where he answers the questions there, correct? Yes. Is there anything else you would point us to, to show, like, where he actually demonstrated competency? Well, yes, Your Honor. We can look to his prior, the prior indications of competency, where he was found to be malingering, overwhelmingly found to be malingering. And yes, that is the evaluator's subjective opinion, but that's why we have those evaluators, to make those subjective opinions, to make recommendations to the Court, and then the Court would ultimately have decided whether he was incompetent had such a hearing been sought. But because of the overwhelming evidence against Mr. Marks, he cannot show prejudice because he can't show that but for counsel's error, he would not have entered a guilty plea. What about, I think, you know, when, I think this is the case. When he was put under questioning, well, he asked for a doctor, which is unusual. Most, you know, most competent defense would ask for a lawyer. Is there any significance to that? Your Honor, I don't believe there is significance to that. As Ms. Sandberg pointed out, he had been in psychiatric hospitals, and of course, he was stabilized before released, but there is a likelihood that he had a better relationship with doctors, that he had built a relationship of trust with doctors, whereas at that time, he didn't have a relationship of trust with a certain attorney. Also, it's possible that that was malingering as well. You know, the doctors overwhelmingly concluded that he was malingering and that he feigned incompetence for the purpose of a secondary gain. Okay. So you'd point us to the transcripts I mentioned, maybe the sentencing transcript, and then there's his history, you would say, that whenever he kind of gets cornered, he says he's incompetent. And we can kind of look at that past to try to review the transcripts. I just want to make sure I understand your argument, because I'm going to be asking opposing counsel why you're right or why you're wrong. Correct, Your Honor. And the other issue is the January 2015 psychiatric hospital records are not the best evidence of Mr. Marks' competence. The respondents do not dispute that Mr. Marks has low intellectual functioning or that he's had mental health issues. But the records from the psychiatric hospital do not state whether he was incompetent to proceed in a legal matter, nor could they, because that is an entirely different analysis. Your Honors, if you – if there are no further questions, I see that my time is expiring and ask that this Court affirm. Thank you, counsel. Thank you. Your Honors, I'll address Respondent's argument that Mr. Marks cannot show prejudice. I argue there's a reasonable probability that he was not competent when he pled guilty. First, I'd like to address this sense that he answered questions in transcripts on the record. There's only one transcript of Mr. Marks answering questions, and that's the – when he pled guilty. The waiver of preliminary hearing was not done on the record. That was simply a signature. The transcript where he pled guilty is, I want to say, I don't remember exactly, but approximately two pages long. He answers yes or no questions, and he even tells the Court at one point that he has a fifth-grade education, and he says that he has some intellectual problems. Now, the Court at that point, we would hope, would ask some more probing questions, but the Court did not do that. It was a litany of yes or no. Let me just jump in, Counselor, because I have a transcript here of the waiver of prelim April 22, 2015, and it looks like the defendant's being asked questions. I just want to make sure. Oh, Your Honor, let me see. ER 1123 through 26. Ask if you waive. Do you understand what's going on? Do you have any questions? Do you talk to your lawyer? Your Honor, I apologize. That is correct. That is correct. No, continue. So, okay, so there's two transcripts. Again, they're very short. We hardly hear from Mr. Marks ever in this record. Now, as to Respondent's argument that these psychiatric visits before his arrest didn't deem him incompetent, of course they didn't. They were not competency evaluators, but what they did note was that he was in a state of and the psychiatrist, without prompting, did note his cognitive deficits. They were not there to evaluate him for competency. Of course, he wasn't facing criminal charges at that time, but they were there to evaluate him, and unprompted, numerous psychologists noted that he had cognitive deficits, that he had an inability to really give a good historical pass, and that his knowledge was very limited. He was not malingering. He wasn't facing charges during this time. He wasn't faking it. There was no reason for him to do this. He was being involuntarily admitted in and out of psychiatric facilities just prior to arrest, and then upon arrest and upon being jailed before his guilty plea, he never once was seen by a psychiatrist. He wasn't seen by a psychiatrist until after sentencing. I submit that this all shows a reasonable probability that he was not competent when he pled guilty, at least such that it shows that this claim is substantial and that Marks the procedural default. I ask that this Court find that he overcome the procedural default and grant the petition in his favor, or if this Court feels that more factual finding is necessary to remand to the District Court for an evidentiary hearing. All right. Thank you very much, Counsel. Thank you both for your briefing and argument. This matter is submitted.
judges: HAWKINS, TASHIMA, OWENS